UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HELEN JOSEPHINE THORNTON,
et al.,

                    Plaintiffs,

         v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

CASE NO. C18-1409JLR

ORDER ADOPTING REPORT
AND RECOMMENDATION

## I.   INTRODUCTION

Before the court is Magistrate Judge J. Richard Creatura's combined report and

recommendation on Plaintiffs Helen Josephine Thornton and National Committee to

Preserve Social Security and Medicare's (the "National Committee") (collectively,

"Plaintiffs") complaint and motion for class certification (the "Report and

Recommendation").  (R&R (Dkt. # 74).)  Magistrate Judge Creatura issued the Report

and Recommendation in response to Plaintiffs' motion on the merits of the complaint and

for class certification.[1]  (*See* Mot. (Dkt. # 53); *see also* Resp. (Dkt. # 63); Reply (Dkt. # 64).)  Plaintiffs and Defendant Commissioner of Social Security ("the Commissioner") also submitted multiple rounds of supplemental briefing to Magistrate Judge Creatura and participated in oral argument before Magistrate Judge Creatura.  (*See* Def. 1st Supp. Br. (Dkt. # 67); Pl. 1st Supp. Br. (Dkt. # 68); Pl. 2d Supp. Br. (Dkt. # 71); Def. 2d Supp. Br. (Dkt. # 73); 11/21/19 Minute Entry (Dkt. # 65); 11/21/19 Hr. Tr. (Dkt. # 70).)  After Magistrate Judge Creatura issued the Report and Recommendation, both parties filed objections to the Report and Recommendation (*see* Def. Obj. (Dkt. # 78); Pls. Obj. (Dkt. # 79)), and responses to the respective objections (*see* Def. Obj. Resp. (Dkt. # 81); Pls. Obj. Resp. (Dkt. # 80).) ).)  The court has considered the motion, the Report and Recommendation, the parties' submissions filed in support of and in opposition to the motion and the Report and Recommendation, the oral argument of the parties, the relevant portions of the record, and the applicable law.  Being fully advised, the court ADOPTS the Report and Recommendation as detailed below.

## II.    BACKGROUND[2]

This case arises out of the Social Security Administration's ("the Administration") decision to deny surviving spousal benefits ("survivor's benefits") to the surviving partners of same-sex couples who were prohibited from marrying because of

---

[1] The parties stipulated to resolving this matter on the briefing.  (*See* 4/11/19 Status Rpt. (Dkt. # 51); 4/16/19 Sched. Order (Dkt. # 52).)

[2] Because the facts and procedural background of this case are well known to the parties and covered in detail in the Report and Recommendation (*See* R&R at 2-8), the court offers only a brief summary here.

1    now-unconstitutional state laws that banned same-sex marriage.  (*See generally* 2d Am.

2    Compl. ¶¶ 1-12.)  As Magistrate Judge Creatura aptly details, Ms. Thornton—the lead

3    plaintiff in this matter—and her partner, Margery Brown, spent 27 years together and

4    "were partners for life in every meaningful way, except sharing a marriage license." (*See*

5    R&R at 2-3.)  During the time that Ms. Thornton and Ms. Brown were together—from

6    approximately 1978 to 2006 (*see* Admin. Record ("AR") (Dkt. # 34) (sealed) at 70-76)—

7    the state of Washington did not allow same-sex marriage, *see* RCW 26.04.010 (1998),

8    *amended by* 2012 Wash. Legis. Serv. ch. 3 (S.S.B. 6239).  Unfortunately, Ms. Brown

9    passed away in 2006 (*see* AR at 75), which was approximately one year before

10    Washington recognized domestic partnerships and six years before Washington legalized

11    same-sex marriage in 2012, *see* RCW 26.04.010 (2012).  It is undisputed that Ms.

12    Thornton and Ms. Brown would have married but for Washington State's law at the time,

13    which made same-sex marriage illegal.  (*See* Mot. at 3-6; Resp. at 35 ("Defendants have

14    chosen not to dispute in this litigation that, but for Washington law, Ms. Thornton herself

15    would have married . . . .").)

16        In January 2015, Ms. Thornton applied for Social Security survivor's benefits

17    based on Ms. Brown's work history pursuant to 42 U.S.C. § 402.  (*See* AR at 19-22.)

18    Under the Social Security Act and the Administration's interpreting regulations, the

19    surviving spouse—either a "widow" or a "widower"—of a deceased person is eligible to

20    be paid monthly survivor's benefits if the deceased spouse would have been insured

21    under the Social Security Act.  *See* 42 U.S.C. §§ 402(e)-(f).  The Social Security Act

22    further provides that "[a]n applicant is the . . . widow, or widower of a fully or currently

insured individual . . . if . . . the courts of the State in which he was domiciled at the time

of death . . . would find that such applicant and such insured individual were validly

married . . . at the time he died."  42 U.S.C. § 416(h)(1)(A)(i).

On April 8, 2015, the Administration denied Ms. Thornton's application for

benefits because she was not married to Ms. Brown at the time of Ms. Brown's death

according to Washington law.  (*See* AR at 20 ("[W]e cannot pay benefits to you because

domestic partnership was not recognized in the State of Washington until January 22,

2007 after Margery B. Brown['s] death.  We cannot pay benefits to you because same sex

marriage was not recognized in the State of Washington until December 14, 2012 after

Margery B. Brown['s] death.").  On December 8, 2015, the Administration denied Ms.

Thornton's request for reconsideration because "at the time of Ms. Brown's death in

2006, the State of Washington did not recognize same-sex marriages."  (*See* Supp. Admin

Record ("Supp. AR") (Dkt. # 50) at 190.)  Ms. Thornton requested a hearing in front of

an Administrative Law Judge ("ALJ"), which was held on October 18, 2016.  (*See* AR at

13.)  On January 10, 2017, the ALJ concluded that Ms. Thornton was not entitled to

survivor's benefits because she was not legally married to Ms. Brown under Washington

law at the time of Ms. Brown's death.  (*Id.* at 15.)  Ms. Thornton appealed, but an appeals

council denied review by letter dated July 23, 2018.  (*Id.* at 2.)

After the Administration denied Ms. Thornton's request for review, Ms. Thornton

filed this action challenging the Administration's denial of her benefits.  (*See generally*

2d Am. Compl.)  Ms. Thornton alleges that the Administration's adjudication of her

claim for survivor's benefits and the claims of other surviving same sex partners violates

the right to equal protection and the right to due process under the Fifth and Fourteenth

Amendments of the United States Constitution.  (*See id.* ¶¶ 87-103.)  The National

Committee—a membership organization that is "committed to ensuring that social

security benefits are widely accessible, including to same-sex spouses"—also joins Ms.

Thornton's challenge to the Administration's actions "in furtherance of its mission and in

support of Ms. Thornton and other similarly-situated members."  (*See id.* ¶¶ 11-12, 14-

16.)

The parties stipulated to address the merits of Ms. Thornton's challenges to the

Administration's actions and the question of class certification and class relief

simultaneously.  (*See* 4/11/19 Status Rpt.; 4/16/19 Sched. Order.)  Magistrate Judge

Creatura issued the Report and Recommendation on January 31, 2020.  (*See* R&R at 38.)

On the merits of Ms. Thornton's claim, Magistrate Judge Creatura concluded that the

Administration's actions violated her rights to due process and equal protection.  (*See*

R&R at 20.)  Magistrate Judge Creatura also concluded that the following class definition

met all of the requirements for class certification under Federal Rule of Civil Procedure

23:

> All persons nationwide who presented claims for social security survivor's benefits based on the work history of their same-sex partner and who were barred from satisfying the marriage requirements for such benefits because of applicable laws that prohibited same-sex marriage.  This class is intended to exclude any putative class members in *Ely v. Saul*, No. 4:18-cv-00557-BPV (D. Ariz.)

(*Id.* at 21.)  Based on those conclusions, Magistrate Judge Creatura recommended that the

court (1) grant Ms. Thornton's motion for class certification and certify the class with the

definition provided above, (2) issue nationwide class relief "requiring the Administration to consider whether survivors of same-sex couples who were denied their constitutional right to marry would otherwise qualify for survivor's benefits," (3) reverse and remand Ms. Thornton's individual claim to the Administration for further proceedings, (4) dismiss the National Committee from the action, and (5) grant judgment for Ms. Thornton and the class.  (*Id.* at 37-38.)

## III.    ANALYSIS

Plaintiffs and the Commissioner object to Magistrate Judge Creatura's Report and Recommendation.  (*See generally* Def. Obj.; Pls. Obj.)  The Commissioner argues that (1) Magistrate Judge Creatura incorrectly ruled that the marriage requirements in the Social Security Act are unconstitutional, and (2) Magistrate Judge Creatura erred in recommending that this court grant class certification.  (*See* Def. Obj. at 2-12.)   Plaintiffs agree with Magistrate Judge Creatura's recommendation on the merits and on class certification, but argue that Magistrate Judge Creatura's proposed class is too narrow and wrongfully excludes individuals who have not yet presented claims for survivor's benefits to the Administration.  (*See* Pls. Obj. at 2-4.)  The parties also raise objections regarding the appropriateness of nationwide relief in this case and whether the National Committee should be dismissed from this action.  (*See id.* at 12; Def. Obj. Resp. at 9-11; Def. Obj. at 12 n.7.)  The court first addresses the Commissioner's objections to Magistrate Judge Creatura's recommendation on the merits of Ms. Thornton's claim, before turning to the parties' objections on class certification and other miscellaneous issues.

**A.      Legal Standard**

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters.  *See* Fed. R. Civ. P. 72(b).  "The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  *Id.*  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  The court reviews de novo those portions of the report and recommendation to which specific written objection is made.  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Pursuant to 42 U.S.C. § 405(g), a claimant may seek judicial review in a federal district court after she obtains from the Commissioner a final judgment of her Social Security claim.  *See Johnson v. Shalala*, 2 F.3d 918, 921 (9th Cir. 1993).  The district court has jurisdiction to enter a "judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  The factual findings of the Commissioner "if supported by substantial evidence, shall be conclusive[.]" *Id.*  The court shall review questions of law with respect to "conformity with such regulations and the validity of such regulations." *Id.*

**B.      The Merits of Ms. Thornton's Claim**

The court has thoroughly examined the record and concludes that the Commissioner's objections to Magistrate Judge Creatura's decision on the merits of Ms. Thornton's claims raise arguments that Magistrate Judge Creatura properly addressed and

1   rejected in the Report and Recommendation.  Prior to addressing the specifics of the

2   Commissioner's objection, however, the court clarifies its understanding of the contours

3   of Ms. Thornton's challenge to the Social Security Act.  The Commissioner attempts to

4   cast Ms. Thornton's challenge in this case too broadly by referring to the "marriage

5   requirement" in the Social Security Act in broad strokes.  (*See, e.g.*, *id.* at 1.)  As noted

6   above, the Social Security Act requires that individuals be either the "widow" or

7   "widower" of a deceased person in order to receive survivor's benefits, *see* 42 U.S.C.

8   §§ 402(e)-(f), and clarifies that "[a]n applicant is the . . . widow, or widower of a fully or

9   currently insured individual . . . if . . . the courts of the State in which he was domiciled at

10  the time of death . . . would find that such applicant and such insured individual were

11  validly married . . . at the time he died," 42 U.S.C. § 416(h)(1)(A)(i).  Ms. Thornton does

12  not challenge this "marriage requirement" *in toto*.  Instead, she argues that the

13  Administration's application of this statutory scheme to deny survivor's benefits to

14  same-sex couples who were unable to marry at the time of the decedent spouse's death

15  based on state laws that have now been declared unconstitutional violates equal

16  protection and due process.  (*See* Mot. at 1-2; 2d Am. Compl. ¶¶ 82-86, 88, 100; R&R at

17  1.)  Thus, the court analyzes the marriage requirement in light of the contours of Ms.

18  Thornton's challenge.[3]

19

20  _____

21  [3] The court also notes that neither party objects to Judge Creatura's conclusion that "the same or similar analysis applies to both the due process clause of the Fifth Amendment (applied to federal statutes) and the due process and equal protection clauses of the Fourteenth Amendment (applied to state statutes)."  (R&R at 9.)  Thus, as Judge Creatura did, the court

22  analyzes Ms. Thornton's due process and equal protection claims under the same framework.

1    The Commissioner argues that rational-basis review applies to the court's review

2  of the marriage requirement (Def. Obj. at 2-7), and that the marriage requirement

3  survives constitutional review if rational-basis review applies, (*id.* at 7-9). The court

4  disagrees on both points.

5    First, the court concludes that heightened scrutiny is warranted.[4] The

6  Commissioner argues that the challenged portions of the Social Security Act are facially

7  neutral and do not "target a suspect class nor burden a fundamental right." (*See* Def. Obj.

8  at 1.) If the Commissioner is correct that the marriage requirement is facially neutral and

9  merely disproportionately impacts same-sex couples, then rational-basis review applies.

10  *See Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1977)

11  ("[O]fficial action will not be held unconstitutional solely because it results in a racially

12  disproportionate impact."). On the other hand, if the marriage requirement incorporates

13  and relies on state law that discriminates on the basis of sexual orientation, it is subject to

14  a heightened level of scrutiny. *See SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d

15  471, 484 (9th Cir. 2014) ("*Windsor*'s heightened scrutiny applies to classifications based

16  on sexual orientation.").

17  _____

18    [4] The court recognizes that Judge Creatura eschewed the traditional analysis of "rational basis" and "heightened scrutiny" review based on recent signals from the Supreme Court that strict adherence to levels of scrutiny may no longer be necessary in cases that impact

19  "fundamental rights" like the right to marry. (*See* R&R at 10-12 (citing *Obergefell v. Hodges*, 576 U.S. 644, 663-64 (2015) and *Pavan v. Smith*, --- U.S. ---, 137 S. Ct. 2075, 2078 (2017)).)

20  Although the court recognizes that *Obergefell* and *Pavan* did not rely on specific levels of scrutiny in reaching their conclusions, those cases also did not explicitly reject the legitimacy of that analysis. *See generally Obergefell*, 576 U.S. 644; *Pavan*, 137 S. Ct. 2075. Because the

21  Ninth Circuit continues to utilize the traditional level-of-scrutiny analysis for due process and equal protection challenges, *see, e.g.*, *United States v. Mayea-Pulido*, 946 F.3d 1055, 1059 (9th

22  Cir. 2020), the court follows that framework here.

1      The court agrees with Magistrate Judge Creatura and a number of other courts

2  that the marriage requirement "cannot be read in a vacuum" in this specific context and

3  must instead be read in conjunction with the provisions of state law defining marriage

4  that the Social Security Act incorporates.  *Ely v. Saul*, No. CV-18-0557-TUC-BGM, 2020

5  WL 2744138, at *7 (D. Ariz. May 27, 2020); *Schmoll v. Saul*, No. 19-cv-04542-NC, Dkt.

6  # 36 ("*Schmoll* Order") at 4 (N.D. Cal. June 15, 2020) ("The duration-of-marriage

7  requirement is inextricable from underlying California law which classifies on the basis

8  of sexual orientation.")[5]; (R&R at 10 ("In this case, since the federal statute providing

9  survivor's benefits conditions benefits on a state's law defining marriage, both must be

10  read together when evaluating Ms. [Thornton's] constitutional rights.  Indeed, they are

11  inseparable—the Administration cannot determine a claimant's eligibility for survivor's

12  benefits without looking to state law.")).  The Commissioner's protestations that this

13  reading "inappropriately attributes to the Social Security Administration historical

14  discrimination by the State of Washington" (*see* Def. Obj. at 1) fails to acknowledge the

15  interconnected nature of the statutory scheme at issue.  The Social Security Act explicitly

16  states that the validity of a marriage shall be defined by state law.  *See* 42 U.S.C.

17

18      [5] Unlike Ms. Thornton and the proposed class in this case, the class in *Ely* and the
   individual plaintiff in *Schmoll* consisted of individuals who were able to marry their same-sex
19  partner once the law in their respective states was changed to permit same-sex marriage.  *See
   Schmoll* Order at 1-2; *Ely*, 2020 WL 2744138, at *1-4.  However, the Social Security Act
20  requires that applicants for survivor's benefits to have been married to the decedent for nine
   months in order to qualify for benefits.  *See* 42 U.S.C. § 416(g).  The plaintiffs in *Ely* and
21  *Schmoll* were unable to satisfy this durational requirement because their spouses died before they
   had been legally married for nine months.  *See Schmoll* Order at 1-2; *Ely*, 2020 WL 2744138, at
22  *1-4.  Outside of this distinction, however, the issues in those cases mirror the ones presented by
   Ms. Thornton.

§ 416(h)(1)(A)(i).  The Administration's implementing regulations could not state this more clearly:  "To decide your relationship as the insured's widow or widower, we look to the laws of the State where the insured had a permanent home when he or she died." 20 C.F.R. § 404.345.

To the extent that there is any doubt about whether the Social Security Act and underlying state law are inextricably intertwined, Ms. Thornton's administrative record eliminates that doubt.  The Administration and the ALJ who reviewed Ms. Thornton's claim for survivor's benefits repeatedly denied her claim based on Washington's unconstitutional failure to recognize same-sex marriage.  (*See* AR at 20 ("[W]e cannot pay benefits to you because domestic partnership was not recognized in the State of Washington until January 22, 2007 after Margery B. Brown['s] death.  We cannot pay benefits to you because same sex marriage was not recognized in the State of Washington until December 14, 2012 after Margery B. Brown['s] death."); Supp. AR at 190 (denying reconsideration because "at the time of Ms. Brown's death in 2006, the State of Washington did not recognize same-sex marriages"; AR at 15 (concluding that Ms. Thornton was not entitled to survivor's benefits because she was not legally married to Ms. Brown under Washington law at the time of Ms. Brown's death).)  Because the Administration repeatedly relied on unconstitutional Washington law to deny Ms. Thornton "the constellation of benefits that the States have linked to marriage," *Obergefell*, 576 U.S. at 670, the court cannot ignore the impact of Washington law when addressing Ms. Thornton's constitutional challenges.

*//*

1    Reading the marriage requirement in conjunction with the Washington law that the

2    Administration applied to Ms. Thornton's claim for survivor's benefits makes clear that

3    heightened scrutiny is warranted because Washington law at the time discriminated on

4    the basis of sexual orientation.  In 2006, when Ms. Brown died, Washington law

5    described marriage as a civil contract that is valid only if "between a male and a female,"

6    RCW 26.04.010(1) (1998), and explicitly provided that a marriage contract is prohibited

7    for couples "other than a male and a female," RCW 26.04.020(1)(c) (1998).  In passing

8    this legislation, the Washington legislature specifically noted that "[i]t is the intent of the

9    legislature by this act . . . to establish public policy against same-sex marriage in statutory

10   law that clearly and definitively declares same-sex marriages will not be recognized in

11   Washington, even if they are made legal in other states."  *See* 1998 Wash. Legis. Serv.

12   Ch. 1, § 2(2) (S.H.B. 1130).  Washington revised its laws to legalize domestic

13   partnerships and same-sex marriages before *Obergefell* held that state laws that

14   prohibited same sex-couples from marrying "burden the liberty of same-sex couples, and

15   . . . abridge central precepts of equality" in violation of due process and equal protection

16   because those laws deny same-sex couples "all the benefits afforded to opposite-sex

17   couples."  576 U.S. at 675-76; *see also* RCW 26.04.010 (2012).  There is no dispute,

18   however, that the Washington law that prevented Ms. Thornton from marrying Ms.

19   Brown before Ms. Brown's death discriminated against Ms. Thornton on the basis of

20   sexual orientation and was unconstitutional.  (*See* Resp. at 2 ("Ms. Brown died thirteen

21   years ago, during a time when Washington state laws that we now know to be

22   unconstitutional prohibited the couple from marrying . . . .").)  Because the

1   Administration relied on an unconstitutional law that discriminated on the basis of sexual

2   orientation in denying Ms. Thornton's claim for survivor's benefits, the marriage

3   requirement must be subjected to heightened scrutiny.[6]  *See SmithKline Beecham Corp. v.*

4   *Abbott Labs.*, 740 F.3d 471, 484 (9th Cir. 2014) ("*Windsor*'s heightened scrutiny applies

5   to classifications based on sexual orientation.").

6        Heightened scrutiny requires the government to provide "a tenable justification

7   [that] describe actual state purposes, not rationalizations for actions in fact differently

8   grounded." *United States v. Virginia*, 518 U.S. 515, 535-36 (1996).  Where, as here, the

9   application of heightened scrutiny is as-applied rather than facial, the government must

10  demonstrate that a justification exists for the policy as applied to the individual in

11  question.  *See Witt v. Dep't of Air Force*, 527 F.3d 806, 819 (9th Cir. 2008).  Those

12  justifications must demonstrate that the government's policy significantly furthers

13  important governmental interests and less intrusive means are unlikely to achieve those

14  interests.  *Id.*

15       The Commissioner does not contend that the marriage requirement survives

16  heightened scrutiny.  (*See* Resp. at 23-28 (arguing that there is no basis to apply

17  heightened scrutiny); Def. Obj. at 2-10 (arguing that Magistrate Judge Creatura should

18  have applied rational basis review to uphold the marriage requirement).)  The court

19  considers the absence of any argument from the Commissioner on this point as a

20

21       [6] The court rejects the Commissioner's argument that this case is similar to disparate
    impact cases where courts upheld "facially neutral" laws for the same reasons that Judge
22  Creatura rejected that argument.  (*See* R&R at 15-16); *see also Schmoll* Order at 5-6 (rejecting
    the Administration's comparison of the marriage requirement to disparate impact cases).

1   concession that the marriage requirement as applied to Ms. Thornton cannot survive

2   heightened scrutiny.

3          This concession is wise.  Although the court concludes that heightened scrutiny is

4   appropriate here, the court agrees with Magistrate Judge Creatura and the *Ely* court that

5   application of the marriage requirement to same-sex individuals like Ms. Thornton cannot

6   withstand scrutiny at *any* level.  (R&R at 17 ("Even if the 'rational basis' test applies,

7   which is questionable, none of the reasons provided by the Administration can provide a

8   rational basis for denying Ms. Thornton survivor's benefits."); *Ely*, 2020 WL 2744138, at

9   *7 ("Because the duration of marriage requirement is based upon an unconstitutional

10   Arizona law, it cannot withstand scrutiny at any level."); *see also Schmoll* Order at 7-8

11   (concluding that the marriage duration requirement cannot survive heightened scrutiny).

12   Magistrate Judge Creatura carefully reviewed and rejected the Commissioner's

13   arguments that the marriage requirement as applied to Ms. Thornton survives rational

14   basis review because (1) it reduces the risk of fraudulent marriages, (2) it improves

15   administrative efficiency, and (3) it awards benefits based on a rational classification that

16   prioritizes those who are most likely to have been in a financially interdependent

17   relationship with the deceased individual.  (*See* R&R at 15-20.)  The Commissioner

18   re-raises those same rational bases in its objection to Magistrate Judge Creatura's Report

19   and Recommendation.  (*See* Def. Obj. at 7-9.)  The court concludes that it need not

20   re-hash Magistrate Judge Creatura's thoughtful rejection of the Commissioner's

21   arguments.  Instead, the court adopts the Report and Recommendation's alternative

22   rational basis analysis and concludes that even if rational basis review applied, the

marriage requirement fails rational basis review as applied to Ms. Thornton.  (*See* R&R at

15-20); *see also Ely*, 2020 WL 2744138, at *7-9.

In sum, the court concludes that heightened scrutiny applies to the

Administration's application of the marriage requirement to Ms. Thornton and that the

marriage requirement cannot survive heightened scrutiny.  As such, the marriage

requirement violates Ms. Thornton's due process and equal protection rights under the

Fifth and Fourteenth Amendments.  Alternatively, the court notes that even if rational

basis review applied, the marriage requirement would still fail.  As such, the court

ADOPTS this portion of Magistrate Judge Creatura's Report and Recommendation,

GRANTS Ms. Thornton's motion on the merits of her claim, and REVERSES and

REMANDS Ms. Thornton's application for benefits to the Administration for

proceedings consistent with this order.

C.     **Class Certification**

Both parties object to portions of Magistrate Judge Creatura's recommendation on

class certification.  First, Plaintiffs object that Magistrate Judge Creatura improperly

narrowed the class by concluding that the court lacks jurisdiction over individuals who

have not yet presented claims for survivor's benefits to the Administration.  (*See* Pls. Obj.

at 6-12.)  Second, the Commissioner argues that class certification is not appropriate in

this case regardless of the class definition and, in the alternative, that Magistrate Judge

Creatura's proposed class is defined too broadly.  (Def. Obj. at 10-12.)  The court first

addresses the definition of the class before turning to the merits of the certification

question.

1      1.      Class Definition

2      The court has thoroughly reviewed Magistrate Judge Creatura's recommended

3   class definition and agrees with Magistrate Judge Creatura that the class should be

4   defined as follows:

5          All persons nationwide who presented claims for social security survivor's
           benefits based on the work history of their same-sex partner and who were
6          barred from satisfying the marriage requirements for such benefits because
           of applicable laws that prohibited same-sex marriage.  This class is intended
7          to exclude any putative class members in *Ely v. Saul*, No.
           4:18-cv-00557-BPV (D. Ariz.)

8   (*See* R&R at 21.)

9      The court rejects Plaintiffs' argument that the court should broaden this definition

10   to include persons who will present claims for survivor's benefits in the future.  (*See* Pls.

11   Obj. at 6-12.)  "Section 405(g) specifies the following requirements for judicial review:

12   (1) a final decision of the Secretary made after a hearing; (2) commencement of a civil

13   action within 60 days after the mailing of notice of such decision (or within such further

14   time as the Secretary may allow); and (3) filing of the action in an appropriate district

15   court[.]"  *Weinberger v. Salfi*, 422 U.S. 749, 763-64 (1975).  The Supreme Court has

16   clarified that the "final decision" requirement breaks down into two parts—a

17   "presentment" requirement and an "exhaustion" requirement.  *See Mathews v. Eldridge*,

18   424 U.S. 319, 328 (1976).  The only jurisdictional element of Section 405(g) is the

19   "presentment" requirement—that a claim for benefits have actually been presented to the

20   Administration.  *Id.*  This requirement is not waivable because it is "central to the

21   requisite grant of subject-matter jurisdiction[.]"  *Salfi*, 422 U.S. at 763-64; *see also Smith*

22

1    *v. Berryhill*, --- U.S. ---, 139 S. Ct. 1765, 1773 (2019) (reaffirming that Section 405(g)'s

2    "requirement that claims be presented to the agency" is "jurisdictional").  Thus, the court

3    does not have subject-matter jurisdiction over hypothetical claimants who will present

4    claims to the Administration in the future.  *See Salfi*, 422 U.S. at 763-64; *Smith*, 139 S.

5    Ct. at 1773.  As such, the court agrees with Magistrate Judge Creatura that individuals

6    who will present claims in the future cannot be included in the class.  (*See* R&R at 23-

7    24.)

8         The court also rejects Plaintiffs' attempts to bring future presenters within this

9    court's jurisdiction using mandamus jurisdiction.  *See* 28 U.S.C. § 1361; (*see also* Pls.

10   Obj. at 11-12).  The Supreme Court has not yet decided whether 42 U.S.C. § 405(h)—the

11   portion of Section 405 barring review "except as herein provided"—is the sole means of

12   reviewing a decision of the Commissioner.  *See, e.g.*, *Califano v. Yamasaki*, 442 U.S.

13   682, 698 (1979); *see also Heckler v. Ringer*, 466 U.S. 602, 616 (1984) ("We have on

14   numerous occasions declined to decide whether the third sentence of § 405(h) bars

15   mandamus jurisdiction over claims arising under the Social Security Act[.]").  Although

16   the court is skeptical that it could rely on mandamus jurisdiction to get around Section

17   405(g)'s jurisdictional presentment requirement, the court need not resolve that issue.

18   Even if mandamus jurisdiction could be applied in this case, the court would not do so

19   here.  Mandamus—which is an extraordinary remedy—is only available to compel a

20   federal official to perform a duty if "(1) the individual's claim is clear and certain; (2) the

21   officials' duty is non-discretionary, ministerial, and so plainly prescribed as to be free

22   from doubt; and (3) no other adequate remedy is available."  *Kildare v. Saenz*, 325 F.3d

ORDER - 17

1   1078, 1084 (9th Cir. 2003) (internal quotation marks and citation omitted).  Here, as the

2   analysis above reveals, individuals who will present a claim for survivor's benefits in the

3   future have an adequate remedy available to them.  They may do as Ms. Thornton did and

4   present their claims to the Administration and then file a lawsuit and seek redress under

5   Section 405(g) in the event that their claim is denied on grounds that they believe are

6   objectionable or unconstitutional.

7           The court also disagrees with the Commissioner's arguments that Magistrate

8   Judge Creatura erred in waiving the exhaustion requirement and the 60-day statute of

9   limitations included in Section 405(g).  (*See* Def. Obj. at 12.)  Unlike the presentment

10  requirement, the parties agree that these Section 405(g) requirements are waivable (*see*

11  Mot. at 28-30; Resp. at 29-31), and the court agrees with Magistrate Judge Creatura that

12  they should be waived in this case (*see* R&R at 24-27).  Where there is no dispute

13  regarding the facts or application of statutory law, and the only issue is the

14  constitutionality of a statutory requirement, waiver of exhaustion is particularly

15  appropriate.  *See Salfi*, 422 U.S. at 766–67.  The Commissioner protests that claims for

16  survivor's benefits are highly fact-specific and should be resolved by the

17  Administration's ALJs.  (*See* Resp. at 30.)  As discussed in more detail, below, the court

18  agrees with the Commissioner on that point and clarifies—as Magistrate Judge Creatura

19  did—that it expects the Administration to conduct such a review to comply with this

20  court's order.  (*See* R&R at 25.)  However, the Commissioner's argument on this point

21  ignores the fact that the Administration does not even consider claims for survivor's

22  //

1   benefits for persons like Ms. Thornton who were not married.  (*See* AR at 15, 20; Supp.

2   AR at 190.)  Thus, it would be futile to require exhaustion.

3         The court also agrees with Magistrate Judge Creatura that once the court waives

4   the exhaustion requirement on futility grounds, the 60-day statute of limit should also be

5   waived.  Although the Administration typically determines whether or not to extend the

6   60-day limitation on filing a district court appeal after exhaustion of administrative

7   remedies, "cases may arise where the equities in favor of tolling the limitations period are

8   so great that deference to the agency's judgment is inappropriate."  *Bowen v. New York*,

9   476 U.S. 467, 480 (1986).  The court concludes that the equities in this case presented by

10   the Administration's blanket refusal to consider claims for survivor's benefits made by

11   individuals who were unable to marry their partner based on unconstitutional state laws

12   favor waving the limitations period.  Moreover, the court notes that the now-waived

13   exhaustion requirement is a prerequisite to filing an appeal in district court.  It makes

14   little sense to waive the exhaustion requirement but strictly enforce the limitations

15   period.[7]

16   //

17   //

18

19

20         [7] The Commissioner claims that the court should not enforce the presentment requirement but waive the exhaustion and statute of limitations requirements.  (*See* Def. Obj. at 12.)  But, as already discussed, binding authority dictates that the presentment requirement is jurisdictional and non-waivable, while the exhaustion and statute of limitations are non-jurisdictional and

21   waivable.  *Salfi*, 422 U.S. at 763-64; *Smith*, 139 S. Ct. at 1773.  Thus, the court has little difficulty exercising its authority to waive the exhaustion and statute of limitations requirements

22   while simultaneously concluding that the presentment requirement must be enforced.

1          2.      Class Certification

2          After carefully considering the record, the parties' extensive briefing, and

3   Magistrate Judge Creatura's Report and Recommendation, the court concludes that the

4   requirements of Rule 23 have been met in this case and, as such, class certification is

5   appropriate.  The Commissioner's primary objections merely recycle arguments that

6   Magistrate Judge Creatura properly considered and rejected.  (*See* Def. Obj. at 11 ("For

7   the reasons stated in [the Commissioner's] prior filings, the recommended class fails to

8   satisfy the commonality, typicality, and numerosity requirements of Rule 23(a).").)  The

9   court rejects this blanket objection to Magistrate Judge Creatura's analysis and adopts the

10  Report and Recommendation's analysis on class certification in full.  (*See* R&R at

11  27-33.)  However, in the interest of completeness, the court addresses the more-specific

12  arguments raised in the Commissioner's objections.

13         First, the Commissioner's arguments that Ms. Thornton has failed to establish the

14  commonality requirement of Rule 23(a) misunderstands the question presented by this

15  case.  (*See* Def. Obj. at 11-12); Fed. R. Civ. P. 23(a)(2), 23(b).  The commonality

16  requirement states that there must be "questions of law or fact common to the class."

17  Fed. R. Civ. P. Rule 23(a)(2).  For commonality, "[w]hat matters . . . is not the raising of

18  common 'questions'—even in droves—but rather, the capacity of a class-wide

19  proceeding to generate common answers apt to drive the resolution of the litigation."

20  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

21         The Commissioner claims that commonality has not been established here because

22  "class members will have to make individualized factual arguments about how their

1    relationship would have progressed in a counterfactual universe in which same-sex

2    marriage was lawful earlier," which allegedly means that class-wide proceedings will not

3    yield common answers to class members' problems.  (*See* Def. Obj. at 11.)  If the

4    common question in this case was whether class members were entitled to survivor's

5    benefits, the court might agree with the Commissioner that commonality would present

6    challenges for the Plaintiffs.  But that is not the common question at issue.  Instead, the

7    common question presented for each of the class members is whether the

8    Administration's practice of denying same-sex partners survivor's benefits because the

9    same-sex partner was unable to marry according to a state law that has now been deemed

10   unconstitutional violates class members' equal protection and due process rights.  (*See*

11   R&R at 30-32.)  As discussed above, the court concludes that, for same-sex partners like

12   Ms. Thornton who were barred from marrying their partner by state law, the

13   Administration has erected an unconstitutional barrier to survivor's benefits by

14   conditioning those benefits on the marriage requirement.  *See supra* § III.B.  The

15   common question in this case for each class member is whether that barrier should be

16   removed.  As Magistrate Judge Creatura noted, once the barrier is removed, it will be up

17   to the Administration to adjudicate class members' claims for survivor's benefits.  (*See*

18   R&R at 31 ("Although each claimant will have an individual case to be made to support

19   his or her claim for survivor benefits, certifying the class will give each class member the

20   opportunity to make that claim—something they have been unable to do in the past.").)

21   However, those factual issues do not prevent the court from resolving the common

22   constitutional question presented by this case on a class-wide basis.

ORDER - 21

1    Although the Commissioner objected to Magistrate Judge Creatura's findings on

2    numerosity (*see* Def. Obj. at 11), the parties stipulated that the numerosity requirement

3    has been met after the court ordered the parties to conduct additional discovery on

4    numerosity (*see* 5/18/20 Order (Dkt. # 82) at 5-8 (ordering the parties to conduct

5    additional discovery); *see* Stip. (Dkt. # 83) ¶ 3 (stipulating that the numerosity

6    requirement is satisfied in this case.)  Given that the Commissioner has withdrawn these

7    objections and now stipulates to numerosity, the court concludes that the numerosity

8    requirement is satisfied by the proposed class.

9    Finally, the Commissioner's objections that this class should not be certified under

10   Rule 23(b)(2) repeat the same mistake that the Commissioner made on the commonality

11   requirement.  (*See* Def. Obj. at 11-12.)  Rule 23(b)(2), "allows class treatment when the

12   party opposing the class has acted or refused to act on grounds that apply generally to the

13   class, so that final injunctive relief or corresponding declaratory relief is appropriate

14   respecting the class as a whole."  *Wal-Mart*, 564 U.S. at 360 (citations and internal

15   quotations omitted).  "The key to the (b)(2) class is the indivisible nature of the injunctive

16   or declaratory remedy warranted—the notion that the conduct is such that it can be

17   enjoined or declared unlawful only as to all of the class members or as to none of them."

18   *Id.* (citation omitted).  The Commissioner claims that the proposed class cannot be

19   certified under Rule 23(b)(2) because "every class member will need to go through

20   additional, individualized litigation."  (Def. Obj. at 11-12.)  As discussed above,

21   however, the issue in this case is whether the Administration's blanket refusal to consider

22   class members' claims for survivor's benefits violates the class's constitutional rights.

1    The class suffers the same constitutional injury as a result of the same action by the

2    Administration, such that "final injunctive relief or corresponding declaratory relief is

3    appropriate respecting the class as a whole" because the Administration's actions "can be

4    enjoined or declared unlawful only as to all of the class members or as to none of them."

5    *Wal-Mart*, 564 U.S. at 360.  Thus, certification under Rule 23(b)(2) is appropriate.

6         In sum, the court rejects the parties' objections to the Report and

7    Recommendation's analysis on the proposed class definition and class certification.  The

8    court ADOPTS this portion of the Report and Recommendation and GRANTS Plaintiffs'

9    motion for class certification.

10   **D.     Nationwide Class Relief**

11        Both parties' objections briefly touch on the issue of the appropriateness of

12   nationwide relief.  (*See* Pls. Obj. at 12; Def. Obj. at 12 n.7.)  In the Report and

13   Recommendation, Magistrate Judge Creatura rejected the Commissioner's argument that

14   any class certified by the court should not be a nationwide class and instead concluded

15   that nationwide class relief is appropriate.  (*See* R&R at 33-36.)  The Commissioner

16   clarified, however, that he objects only to nationwide injunctive relief in the absence of

17   class certification.  (*See* Def. Obj. at 12 n.7.)  Although the Commissioner reiterated that

18   he does not believe that a class should be certified under Rule 23, he conceded that if the

19   court disagrees and certifies a class in this case, he has no objection to the class extending

20   nationwide and receiving nationwide relief.  (*See id.*)  Thus, given that the court has now

21   concluded that class certification is appropriate, there is no objection to certification of a

22   nationwide class or the issuance of nationwide class relief.  As such, the court concludes

1    that the class in this case extends nationwide and that the class is entitled to injunctive

2    relief.

3          Plaintiffs argue, however, that even if the court certifies a nationwide class in this

4    case, it should nevertheless opine on whether it would be appropriate to issue a

5    nationwide injunction even if class certification was inappropriate.  (*See* Pls. Obj. at 12.)

6    The court declines to weigh in on that hypothetical.  Class certification is warranted on a

7    nationwide basis, and certifying the class in this case affords complete relief to the

8    injured class members.  *See Yamasaki*, 442 U.S. at 701-03 (concluding that nationwide

9    class relief under 42 U.S.C. § 405(g) was appropriate and adequate to afford complete

10   relief to the parties).

11   **E.     The National Committee**

12         The court is perplexed by the National Committee's inclusion in this case

13   alongside Ms. Thornton.  The complaint indicates that "[t]he National Committee joins

14   this action in furtherance of its mission and in support of Ms. Thornton and other

15   similarly-situated members who are wrongfully denied Social Security survivor's

16   benefits based on SSA's unconstitutional incorporation of, and reliance upon,

17   discriminatory state laws previously barring same-sex couples from marriage."  (2d Am.

18   Compl. ¶ 11.)  However, Ms. Thornton brought this lawsuit as a class action and Ms.

19   Thornton, not the National Committee, is the proposed class representative.  (*See* Mot. at

20   25-26 ("Ms. Thornton seeks to represent a class of similarly situated surviving same-sex

21   partners who face the same discriminatory treatment by [the Administration].").)  Beyond

22   //

1 │ providing "support" for Ms. Thornton's claim, the National Committee has not filed any

2 │ of its own claims.  (*See* 2d. Am. Compl. ¶¶ 11, 80.)

3 │      It thus appears as though the National Committee was included in this action

4 │ solely to give Plaintiffs a second bite at nationwide injunctive relief in the event that the

5 │ court chose not to certify a class in this case.  (*See* Pls. Obj. at 12 (arguing that the

6 │ National Committee is entitled to nationwide injunctive relief independent of class

7 │ certification).)  As noted above, the court need not address Plaintiffs' request for

8 │ nationwide injunctive relief because the court has certified a nationwide class in this case.

9 │ To the extent that any of the National Committee's members are similarly situated to Ms.

10 │ Thornton, they are class members and will be afforded relief by the court's order.

11 │      Nevertheless, in the interest of completeness, the court concludes that it lacks

12 │ subject matter jurisdiction over the National Committee because the National Committee

13 │ has not satisfied the jurisdictional presentment requirement.  Section 405(g) states that

14 │ "any individual" may file a claim for judicial review and makes no mention of

15 │ organizational standing to present claims to the Administration or to bring a civil action

16 │ in federal court.  *See* 42 U.S.C. § 405(g).  The National Committee's "presentment letter"

17 │ highlights the problem presented by the National Committee's attempts to join this case

18 │ as an organization on behalf of its members.  (*See* Philips Decl. (Dkt. # 56) ¶ 7, Ex. A.)

19 │ The letter states that "[t]he National Committee's membership includes individuals

20 │ otherwise entitled to receive Social Security survivor's benefits who were

21 │ unconstitutionally barred from being married to their long-term committed same-sex

22 │ partners for a sufficient period of time prior to those partners' deaths," but the only

1   individual claimant identified in the letter is Ms. Thornton.  (*Id.* at 2-4.)  Merely sending

2   a letter on behalf of unnamed members without any details about those individuals'

3   claims for survivor's benefits is not sufficient to satisfy Section 405(g)'s presentment

4   requirement.  The letter did not provide the Administration with any meaningful

5   opportunity to review the alleged underlying claims.  Indeed, the court concludes that the

6   National Committee's attempt at satisfying the presentment requirement—and its

7   presence in this litigation on the whole—is little more than gamesmanship.  Thus, the

8   court agrees with Magistrate Judge Creatura—albeit, on different grounds (*see* R&R at

9   36-37)—that the National Committee should be dismissed from this case.

10  **F.      Order to Show Cause**

11          The court believes that its analysis above resolves the remaining issues on the

12  merits of this case.  Out of an abundance of caution, however, the court concludes that

13  additional briefing is necessary regarding the exact scope of class-wide injunctive relief

14  warranted as a result of the court's order.  To recap, the court certifies the nationwide

15  class defined above and concludes that the class is entitled to relief.  *See supra*

16  §§ III.C-D.  The court also believes that the appropriate form of relief to provide to the

17  class is an order that requires the Administration to (1) re-adjudicate class members'

18  claims for survivor's benefits, and (2) refrain from denying class members' claims solely

19  on the basis that class members were not married to their same-sex partner.  The court is

20  contemplating an order that includes the following language:

21          The court ORDERS the Administration to re-adjudicate class members'
            claims on terms consistent with this order and ENJOINS the Administration
22          from denying social security survivor's benefits to class members without

considering whether class members would have satisfied the marriage requirements but for applicable laws that prohibited same-sex marriage.

Accordingly, the court ORDERS the parties to show cause and provide briefing regarding the adequacy of this proposed relief in light of the court's rulings herein and whether any other relief is both necessary and otherwise consistent with the court's rulings.  The briefing schedule for this order to show cause is set forth below.

## IV.   CONCLUSION

For the reasons set forth above, the court:

(1)      ADOPTS the Report and Recommendation (Dkt. # 74) as described above;

(2)      GRANTS Ms. Thornton's claim for individual relief on the merits and REVERSES and REMANDS her claim to the Administration for further proceedings consistent with this order and the Report and Recommendation;

(3)      GRANTS Ms. Thornton's motion for class certification (Dkt. # 53) for a class represented by Ms. Thornton and defined as:

> All persons nationwide who presented claims for social security survivor's benefits based on the work history of their same-sex partner and who were barred from satisfying the marriage requirements for such benefits because of applicable laws that prohibited same-sex marriage.  This class is intended to exclude any putative class members in *Ely v. Saul*, No. 4:18-cv-00557-BPV (D. Ariz.);

(4)      APPOINTS Plaintiffs' counsel as class counsel in this matter pursuant to Federal Rule of Civil Procedure 23(g);

(5)      DISMISSES the National Committee from this case; and

(6)      ORDERS the parties to show cause regarding the appropriate form of relief to grant class members in this case in light of this order.  Ms. Thornton shall file her

1   response to the court's order to show cause within 14 days of the filing date of this order.

2   The Commissioner's response, if any, shall be due within 14 days of the filing date of

3   Ms. Thornton's response.  There shall be no reply unless the court orders otherwise.  The

4   parties' briefing shall not exceed six pages in length.

5        The court DIRECTS the Clerk to send copies of this order to Magistrate Judge

6   Creatura.

7        Dated this 11th day of September, 2020.

8

9

10   JAMES L. ROBART
    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22